## THOMAS J. DOODY V. NATIONAL MASONIC ACCIDENT ASSOCIATION.

### FILED NOVEMBER 19, 1902. No. 12,228.

### Commissioner's opinion, Department No. 3.

**Mutual Accident Association:** HAZARD: CLASSIFICATION: LIMITED RECOVERY. A mutual accident association classified its members according to the hazard of their respective occupations. The plaintiff belonged to a class which entitled its members to $2,500 for the loss of a hand by accident. The members of another class were entitled to but $500 for such injury. A clause of the by-laws, which were a part of the contract of insurance, provided that no greater amount should be paid any member than the amount payable to the latter class for any injury received while hunting, or in any way using or handling firearms. The plaintiff lost his hand by the discharge of a gun which he was removing from one room of his house, where it was left by one of his boarders, to another. *Held,* That his recovery was limited to $500.

ERROR from the district court for Lancaster county. Action upon accident insurance policy. Tried below before FROST, J. Judgment for plaintiff for a part of his demand; he brings error. *Affirmed.*

*Tibbets Bros., Morey & Anderson,* for plaintiff in error.

*Frank M. Hall* and *Carlton C. Marlay, contra.*

---

ALBERT, C.

This action was brought on an accident insurance policy issued to the plaintiff by the defendant. Defendant is a mutual concern, and the members are classified according to the hazard of their occupations. The plaintiff was classified as the proprietor of a boarding house, and belonged to "class one," whose members were entitled to an indemnity of $2,500 for the loss of a hand, while those of class 6 were entitled to but $500 for such injury. The by-laws of the defendant, which are part of the contract of insurance, provide, among other things, as follows: "Nor shall any greater amount be paid to any member or his beneficiary than the amount named in class 6 for or on account of any injury received by any member while hunting, or while in any way using or handling loaded firearms." At a time when the policy was in force the plaintiff undertook to carry a loaded gun in his hands, from the dining-room, where it had been left by one of his boarders, to a closet in an adjoining room. While doing so, the gun was discharged, destroying his hand. As proprietor of a boarding house, he was entitled, under his policy, to an indemnity of $2,500, unless the act in which he was engaged at the time of the injury was handling firearms, within the meaning of the clause of the by-laws hereinbefore quoted, in which case he would be entitled to but $500. The trial court held that the act of removing the loaded gun from the dining-room was handling firearms, within the meaning of said clause, and directed a verdict in favor of the plaintiff for $500, with interest. Judgment accordingly. The plaintiff brings error.

The sole question in this case is whether the plaintiff at the time he received the injury was in any way handling firearms, within the meaning of the qualifying clause of the by-laws; and this question depends upon the meaning to be given to the word "handling," as therein used. The plaintiff argues that the phrase "in any way," which precedes the word in the qualifying clause, does not enlarge

the meaning of the word. The authorities cited in support of this proposition hardly support this claim. The phrase certainly does not restrict the meaning of the word. It should be given some meaning, if possible. While we may concede, for the purpose of the argument, that it does not enlarge the meaning of the word, we think it at least shows an intention on the part of the contracting parties that the word should be taken in the comprehensive sense in which it is generally used. It is a well-known rule of construction that words are to be taken in their ordinary meaning unless it appear that the parties used or understood them in a different sense. There is nothing in the context nor in the record to indicate that the parties to the contract of insurance used or understood the word in question in any other than the ordinary sense. The plaintiff contends that as the word is commonly used, it is synonymous with the words "ply," "wield," and "manipulate." We know of no common use of the word that gives it a different meaning than that to be found in the standard lexicons of the language. "To handle" is defined by the Standard Dictionary (1894) as "to use the hands upon, turn, adjust, examine, or feel with the hand; touch; to manage, contrive, or direct with or as with the hands; use; ply; wield; manipulate; as, to handle a musket or an oar, etc." By the Century Dictionary (1889) it is defined as "to touch or feel with the hand; use the hand or hands upon; to manage by hand; use or wield with manual skill; ply; manipulate; act upon or control by the hand; in general, to manage; direct; control." By Webster's Dictionary (1894) it is defined as "to touch; to manage in using, as a spade or a musket; to wield; often, to manage skillfully." From the foregoing definitions it will be seen that while the word may be synonymous with such words as "ply," "wield," and "manipulate," none of such words, nor all of them, are its verbal equivalent. It is a more comprehensive term, and includes not only the act of plying, wielding and manipulating, but touching, using the hands upon, acting upon or controlling by the hand, and

other acts.    Had the parties used the equivalent of the
word, as shown by the foregoing definitions, instead of the
word itself, there could be no question that the act in
which the plaintiff was engaged at the time of the injury
was within the meaning of the qualifying clause of the
by-laws.    We are unable to see how the legal effect of the
language is in any manner changed by the use of a word
which comprehends all such acts.    The plaintiff, however,
invokes the rule that when a policy admits of two mean-
ings, that which is most favorable to the insured is always
to be adopted.    That rule has no application to this case.
There is a difference between a comprehensive term and
an ambiguous one.    The question here is not which of two
or more meanings shall attach to a word, but whether we
shall exclude from the meaning of such word certain acts
which standard authors hold to be included within it.    In
the absence of special circumstances to justify it, the rule
does not warrant this court in arbitrarily holding that a
part of the acts included within the meaning of the term
were not within contemplation of the parties at the time
the contract was made.    In fact we know of no general term
that so aptly expresses what the plaintiff was doing with
the gun when he received the injury as the word "hand-
ling."

It is also contended by the plaintiff that the injury was
received while he was in the ordinary course of his oc-
cupation as a boarding-house keeper.    We are unable to
see how that affects the case.    There was no unqualified
promise to indemnify him against accidents occurring
while he was engaged in such occupation, nor to pay him
$2,500 for the loss of a hand resulting from such accident.
On the contrary, the by-laws specifically excepted certain
acts, among which was that in which the plaintiff was en-
gaged when the injury occurred.    For the injury resulting
to the plaintiff while engaged in such act, the promise of
the defendant was to pay him $500.

The judgment of the district court is the full measure

of the defendant's liability, and we recommend that it be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.