### BANKERS LIFE & LOAN CO. v. EIGHINGER.

No. 12031.

Court of Civil Appeals of Texas. San Antonio.

Jan. 4, 1950.

Murray & Mizell, Harlingen, for appellant.

Carter & Stiernberg, Harlingen, for appellee.

NORVELL, Justice.

As to the facts, the parties stipulate in part as follows: "That about 8:00 o'clock on the morning of January 10, 1948, the deceased, William H. Eighinger, came through his house and onto the back porch with a shotgun, walked off the porch, onto a concrete walk and started out toward the back yard on the walk. That he had disappeared behind some bushes, and from view of one from the house when his foot slipped causing him to fall. That the gun went off shooting him in the upper stomach or chest. That he died from such wounds within a short time, and within a few hours thereafter."

There was in force at the time of Eighinger's death, an insurance policy issued by appellant, Bankers Life & Loan Company, which obligated the company to pay to the appellee, Mary V. Eighinger, the mother of the said William H. Eighinger, the sum of $400.00, in the event her son was accidentally killed. The policy, however, contained in Part XI thereof, certain "Special Limitations." Section B of Part XI of the policy reads as follows, to-wit: "Section B. If death or disability resulting from an injury occurs while the Insured is (1) engaged in military, naval or aerial service; (2) while engaged in bicycle, motorcycle or automobile racing; (3) while handling explosives or firearms; (4) while participating in riots or strikes, the benefits payable for such losses shall be reduced to the amount of Ten ($10.00) Dollars."

The question presented is whether the general insuring clause relating to accidental death or the Special Limitation of Section B, Part XI, of the policy controls the amount of the award which should be paid to the beneficiary. The trial court held that the special limitation was not applicable under the stipulated facts.

In our opinion, the trial court erred in so holding. It seems readily apparent that the phrase, "while handling explosives or firearms," as used in the special limitation does not attempt to provide an occupational category such as was involved in the case of Thomas v. Masons' Fraternal Accident Association of America, 64 App.Div. 22, 71 N.Y.S. 692, 693, wherein the limitation applied to one "employed in the manufacture, sale, or transportation of any explosive compound, or handling fire arms, unless insured to cover such employment." In the New York case it appeared that the amount of recovery was determined by occupational classification.

The primary meaning of the word "handle," as given in Webster's New International Dictionary, Second Edition, is as follows: "1. to touch; to feel with the hand; to hold, take up, move or otherwise affect, with the hands; to use the hands upon."

This is the commonly understood meaning of the word and insurance contracts should be "construed according to the normal tenure and meaning of the terms employed so as to carry out the intention of the parties." 13 Appleman on Insurance Law and Practice, § 7402, page 87. It is our opinion that under the stipulated facts William H. Eighinger was handling firearms at the time of the unfortunate accident which resulted in his death.

It is stated in American Jurisprudence, on authority of Doody v. National Masonic Accident Ass'n, 66 Neb. 493, 92 N.E. 613, 60 L.R.A. 424, that: " 'Handling Firearms.'—Carrying a loaded gun from one room of a house, in which it has been left by another person, to an adjoining room is 'handling firearms' within the meaning of a clause in an accident insurance policy limiting the recovery for any injury received while hunting, or while using or handling loaded firearms." 29 Am.Jur. 765, § 1012.

The judgment appealed from is reformed so as to reduce the amount of appellee's judgment from $400.00 to $10.00. As so reformed, the judgment is affirmed.

BROETER, J., not participating.